# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALEXANDER FRYE,** | : | **CIVIL NO. 1:16-CV-1538** |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| v. | : | |
| **SCI BENNER MEDICAL DEPT., DR. DOLL,** | : | |
| **Defendants** | : | |

## **MEMORANDUM**

Plaintiff Alexander Frye ("Frye"), an inmate confined at the State Correctional Institute at Benner Township ("SCI-Benner"), initiated the instant civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The remaining defendant is Dr. Christina Doll. Presently pending before the court is defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 20). Despite being directed to file a brief in opposition to defendant's motion, Frye failed to oppose the motion. (See Doc. 22). Consequently, the motion is deemed unopposed and ripe for disposition. See L.R. 7.6 ("Any party opposing any motion . . . shall file a brief in opposition . . . [or] shall be deemed not to oppose such motion"); see also (Doc. 22) (advising Frye that failure to file a brief in opposition to defendant's motion would result in the motion being deemed unopposed). For the reasons set forth below, the court will grant defendant's motion.

I.  **Allegations of the Complaint**

In the complaint Frye alleges:

> During the years of 2015 and 2016 I was seen by several nurses, physician assistants, and other's [sic] in medical trying to explain to them that I have a history of recurrent seizure disorder, and asthma plus bilateral eye surgeries. The SCI Benner Medical Dept. is involved because after being seen and reviewed over 50, or more times they have failed to review my medical files. I have Uniontown hospital records confirming my seizure and medical history and still they are refusing to provide me the correct medical treatment which is classified as medical malpractice.

(Doc. 1, at 2-3).[1] Frye alleges defendant Doll "is involved because I wrote and asked him [sic] to review my medical history, and got no response[.] I should be on seizure meds and other past previous medications but he [sic] refuses to review my medical history or even treat my disorders." (Id. at 3).

II.  **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and

---

[1] On September 13, 2016, the court dismissed SCI-Benner Medical Department as a defendant in this action. (See Doc. 14).

items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

**III.  Discussion**

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  See 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

Defendant seeks dismissal of the complaint based on Frye's failure to raise the claims against her in the prison's administrative review process prior to

proceeding in federal court.² Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. See 42 U.S.C. § 1997e(a); Booth v. Churner, 206 F.3d 289, 291 (3d Cir. 2000). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at 741 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." Nyhuis, 204 F.3d at 73 (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998).

---

² In Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004), the United States Court of Appeals for the Third Circuit addressed the issue of whether the defendants in Spruill properly identified their motion as one for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). The court noted that "[g]iven that the exhaustion issue turns on the indisputably authentic documents related to Spruill's grievances, we hold that we may also consider these without converting it to a motion for summary judgment." Id. at 223 (citing Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1212 (10th Cir. 2003)). See also Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) ("In appropriate cases, failure to exhaust may be raised as the basis for a motion to dismiss"); Ray v. Kertes, 285 F.3d 287, 293 n.5 (3d Cir. 2002) (motions to dismiss may be pursued on failure to exhaust grounds in certain circumstances). Like the court in Spruill, we will consider the Department of Corrections' policies and inmate grievance records as indisputably authentic documents. See Spruill, 372 F.3d at 223 (suggesting that an inmate's grievance records are "indisputably authentic documents").

Courts have also imposed a procedural default component on the exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); see also Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court. See Spruill, 372 F.3d 218. "As for the failure to identify named defendants on the grievance form, . . . to the extent the identity of a defendant was 'a fact relevant to the claim,' Pennsylvania's prison grievance policy mandated that the identification be included in the inmate's statement of facts on the grievance form. And, . . . in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA." Williams v. Pennsylvania Dep't of Corr., 146 F. App'x 554, 557 (3d Cir. 2005) (non-precedential). An "untimely or otherwise procedurally defective administrative grievance" does not satisfy the PLRA's exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). Thus, the PLRA mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Id. at 92.

The Pennsylvania Department of Corrections has an Inmate Grievance System which permits any inmate to seek review of problems that may arise during the course of confinement. See 37 PA. CODE § 93.9(a); PA. DEP'T OF CORR., No. DC-ADM 804. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the Facility's Grievance Coordinator for initial review.

6

This must occur within fifteen days after the events upon which the claims are based. Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. Thereafter, within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). See Booth v. Churner, 206 F.3d 289, 293 n. 2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process). An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. See Booth, 206 F.3d at 293 n. 2 (outlining Pennsylvania's grievance review process); Ingram v. SCI Camp Hill, 448 F. App'x 275, 279 (3d Cir. 2011) (same).

Defendant asserts that Frye fails to allege that he filed any grievances concerning defendant's conduct and, moreover, Frye never appealed any grievances to Final Review. (Doc. 21, at 3-13). As noted above, the standard used in determining whether a prisoner has exhausted the administrative process is whether he complied with the applicable grievance procedures and rules.

In the complaint, Frye claims that he fully exhausted his administrative remedies, stating: "I wrote to medical[] dept. several times and they denied me saying no seizure disorder, also wrote and informed housing unit staff." (Doc. 1, at 2). However, Michael Bell, Grievance Review Officer for SOIGA, stated: "As part of my duties as a Grievance Officer, I respond to requests for information directly related to litigation. In this case I've reviewed inmate #LM-3626, Alexander Frye's

7

grievance history. While Mr. Frye has filed grievances, he has never appealed any to Final Review." (Doc. 21-1, at 1).

A review of the institution's grievance files confirms that Frye failed to appeal the relevant grievances to Final Review. During his incarceration at SCI-Benner, Frye filed a total of thirty-nine (39) grievances. The grievances are summarized as follows:

1. Grievance No. 639439. Frye submitted a grievance complaining that he was not paid for a full eight hours he worked. (Doc. 21-2 at 4-8).

2. Grievance No. 624004: Frye submitted a grievance complaining that he was not provided with an updated photo ID card. (Doc. 21-2 at 9-14).

3. Grievance No. 627558: Frye submitted a grievance complaining that he has not been placed on the barber shop list. (Doc. 21-2 at 15- 16).

4. Grievance No. 624959: Frye submitted a grievance complaining about his employment opportunities within the prison. (Doc. 21-2 at 17-18).

5. Grievance No. 621710: Frye submitted a grievance complaining that he did not receive the commissary that he ordered. (Doc. 21-2 at 19-21).

6. Grievance No. 614172: Frye submitted a grievance complaining that he was "shorted hours" in his work pay. (Doc. 21-2 at 22-23).

7. Grievance No. 613205: Frye submitted a grievance complaining that his treatment group meetings were held at an inconvenient time for him. (Doc. 21-2 at 24-25).

8. Grievance No. 609090: Frye submitted a grievance complaining that his seizure disorder had not been properly treated. (Doc. 21-2 at 26-27).

9. Grievance No. 606834: Frye submitted a grievance complaining that the prison is required him to start his AA/NA meetings over after he missed a meeting. (Doc. 21-2 at 28-30).

10. Grievance No. 606766: Frye submitted a grievance complaining about his employment opportunities within the prison. (Doc. 21-2 at 31-32).

11. Grievance No. 605367: Frye submitted a grievance complaining that his inmate account was not credited back the money he was owed by the DOC for the cost of his glasses. (Doc. 21-2 at 33-34).

12. Grievance No. 605361: Frye submitted a grievance complaining that his coat was destroyed in the laundry and demanding that the prison pay to repair it. (Doc. 21-2 at 35-36).

13. Grievance No. 592843: Frye submitted a grievance demanding that the prison pay to replace his glasses that were broken when another inmate threw a football to him in the yard. (Doc. 21-2 at 37-41).

14. Grievance No. 591756: Frye submitted a grievance complaining that his razor was improperly confiscated. (Doc. 21-2 at 42-43).

15. Grievance No. 591605: Frye submitted a grievance complaining that he is being prohibited from calling someone because the prison believes that person has a criminal record. (Doc. 21-2 at 44-45).

16. Grievance No. 592405: Frye submitted a grievance requesting that a sergeant be reprimanded for disrespecting inmates. (Doc. 21-2 at 46-47).

17. Grievance No. 587256: Frye submitted a grievance complaining that money was improperly deducted from his inmate account for court costs. (Doc. 21-2 at 48-52).

18. Grievance No. 587258: Frye submitted a grievance complaining that his laundry arrived late. (Doc. 21-2 at 53-54).

19. Grievance No. 566574: Frye submitted a grievance complaining about his work assignment. (Doc. 21-2 at 55-59).

20. Grievance No. 577992: Frye submitted a grievance complaining that the prison refused to move him to another block. (Doc. 21-2 at 60-61).

21. Grievance No. 569898: Frye submitted a grievance complaining that although he had paid for his replacement ID, he had not received the same. (Doc. 21-2 at 62-64).

22. Grievance No. 569986: Frye submitted a grievance complaining that his payroll was incorrect. (Doc. 21-2 at 67-69).

23. Grievance No. 567367: Frye submitted a grievance complaining that his payroll was incorrect. (Doc. 21-2 at pp. 70-71).

24. Grievance No. 565456: Frye submitted a grievance complaining that his requests to speak with his attorney were denied. (Doc. 21-2 at 72-74).

25. Grievance No. 564554: Frye submitted a grievance complaining that the shift commander failed to follow the yard schedule that day. (Doc. 21-2 at 75-76).

26. Grievance No. 564544: Frye submitted a grievance complaining that his mail was being improperly held. (Doc. 21-2 at 77-78).

27. Grievance No. 564287: Frye submitted a grievance complaining that his mail was being improperly held. (Doc. 21-2 at 79-80).

28. Grievance No. 564172: Frye submitted a grievance complaining that his payroll was incorrect. (Doc. 21-2 at 81-84).

29. Grievance No. 564172: Frye submitted a grievance complaining that his payroll was incorrect. (Doc. 21-2 at 85-87).

30. Grievance No. 564002: Frye submitted a grievance complaining that the medical department refused to obtain a copy of his medical records from Uniontown Hospital. (Doc. 21-2 at 88-89).

31. Grievance No. 562351: Frye submitted a grievance complaining about his mail being sent to a different block. (Doc. 21-2 at 90-91).

32. Grievance No. 562120: Frye submitted a grievance complaining that he was denied yard and a shower by the corrections officer. (Doc. 21-2 at 92-93).

33. Grievance No. 561699: Frye submitted a grievance complaining that he was denied the opportunity to go to school after being put in cell restriction. (Doc. 21-2 at 94-95).

34. Grievance No. 556400: Frye submitted a grievance complaining that he had not been placed on medication for his seizures. (Doc. 21-2 at 97-98).

35. Grievance No. 554859: Frye submitted a grievance complaining that he had yet to be enrolled in school. (Doc. 21-2 at 99-103).

36. Grievance No. 554526: Frye submitted a grievance complaining that money was improperly deducted from his inmate account. (Doc. 21-2 at 104-105).

37. Grievance No. 552111: Frye submitted a grievance complaining that he had been denied medication for seizures after being diagnosed with the same at Uniontown Hospital. (Doc. 21-2 at 106-108).

38. Grievance No. 552110: Frye submitted a grievance complaining that his previous facility (SCI-Somerset) failed to mail him his commissary order. (Doc. 21-2 at 09-112).

39. Grievance No. 551805: Frye submitted a grievance complaining that the sidewalks had not been properly plowed and salted after a snow storm. (Doc. 21-2 at 113-114).

(Doc. 21-2, at 4-114).

Frye filed four (4) grievances regarding his medical care at SCI-Benner. However, he failed to appeal any of these grievances to Final Review. Indeed, Frye failed to even appeal these grievances to the institution's Facility Manager.

In Grievance Number 552111, Frye wrote:

This is my second grievance about I have a seizure disorder[.] [T]hey can't find it in my chart at all[.] Only person who found it was phsy Dr. Karmodle at SCI SMR. I told SCI Pittsburgh, SCI Camp Hill, SCI SMR and now here I was diagnosed by Uniontown Hospital with seizure disorders. Pittsburgh took me off my seizure meds for no reason. Please look in [] all my chart[.] I would like to be seen by medical without being charge[d] 5.00 dollar medical copay and be place[d] on bottom tier bottom bunk status[.] I tried everything I could by Requested slip and sick call slip and the second grievance[,] see attached sick call dated 2-15-15.

(Doc. 21-2, at 107). On March 9, 2015, Douglas Bopp, Corrections Health Care Administrator, denied the grievance. In the initial review response, Mr. Bopp replied:

11

> Mr. Frye I read your grievance and reviewed your medical record in regards to your stated seizure history and I could not find any documentation confirming it. I attempted to contact your mother since she is listed as next of kin and she did not answer the phone. Please sign [up] for sick call (no charge) and discuss your seizure history. Please give staff the name of the hospital so records can be retrieved. You have not signed up for sick call here to address this and sick call is the proper avenue to take to discuss your issues. Your grievance is denied.

(Doc. 21-2, at 106). Frye did not appeal this grievance.

On March 11, 2015, Frye filed Grievance Number 556400 complaining about the same issue in Grievance Number 552111. (Doc. 21-2, at 98). On March 13, 2015, the grievance was rejected on the ground that the issue had already been reviewed and addressed in prior Grievance Number 552111. (Doc. 21-2, at 97). The Facility Grievance Coordinator explained:

> On 2/19/15 you filed Initial Grievance #552111 indicating that you have a seizure disorder and while at SCI Pittsburgh, they took you off your seizure medications for no reason. This Initial Grievance was assigned to CHCA Bopp who indicated in his Initial Grievance response that he tried contacting your Next of Kin. He also encouraged you to sign up for sick call (free of charge) to discuss your seizure disorder. In accordance with DC-ADM 804, Inmate Grievance System Procedures Manual Section 1-Grievances & Initial Review A. 16. any grievance issue that has been previously addressed will not be re-addressed in a subsequent grievance.

(Doc. 21-2, at 97). Frye failed to appeal this grievance.

On April 22, 2015, Frye filed Grievance Number 564002, pertaining to the same issues that were already addressed in Grievance Numbers 556400 and 552111. (Doc. 21-2, at 89). On April 27, 2015, the Facility Grievance Coordinator rejected the grievance, and stated:

12

> Per DC-ADM 804, Inmate Grievance System Procedures Manual, Section 1.A. 16- Any grievance issue that has been previously addressed will not be re-addressed in a subsequent grievance. ***Any concern with the previous grievance, previous grievance decision or the staff member who rendered that decision must be addressed through the appeal process outlined in Section 2 of this procedures manual.*** Grievance #552111 was previously reviewed and addressed on 3/6/2015.

(Doc. 21-2, at 88) (emphasis in original). Frye did not appeal this grievance.

Nine months later, on January 23, 2016, Frye filed Grievance Number 609090, complaining of the same issues that were previously reviewed and addressed by the prison staff. Frye grieved as follows:

> I have a seizure disorder diagnosed by Fayette County Uniontown Hospital[.] SCI Benner and SCI Somerset and SCI Pittsburgh and Camp Hill [were] notified by me[.] [T]hey refused to get me to sign a release paper for medical [to] get all my medical record from Uniontown Hospital[.] I am seeking relief that medical get me to sign release paper to get my medical records from Uniontown Hospital.

(Doc. 21-2, at 27). On February 11, 2016, Lori Sossong, R.N., acting Corrections Healthcare Administrator, denied the grievance and stated:

> Alexander Frye, I read your grievance and you state that you have been diagnosed with a seizure disorder. Upon a thorough chart review, I could not find where you have had a seizure and there is no documentation that you have a seizure disorder. I understand that you wish to have medical records from Uniontown Hospital sent here to Benner. I noticed in March of 2015 you have grieved this issue of seizures and medical records. Doug Bopp, CHCA at the time advised you to sign up for sick call to speak with the practitioner to do so. You did not do this. Once you do this then you can sign a release and the records can be sent to us here at Benner. Until then, there is nothing else to do for you about this issue. Your grievance is denied.

(Doc. 21-1, at 26). Frye failed to appeal this grievance.

13

Rather than comply with the directives of the prison grievance coordinators, Frye chose to abandon his grievances. Frye failed to oppose defendant's motion, and failed to present any response to defendant's argument that he failed to utilize the DOC's Inmate Grievance System with respect to any claims against defendant Doll. Notably, Frye failed to set forth any allegations that prison officials obstructed his attempt to exhaust the administrative remedy process, or that his efforts to utilize the administrative review process were impeded in any manner. Courts have invariably held that affirmative misconduct by prison officials, designed to impede or prevent an inmate's attempts to exhaust, may render administrative remedies unavailable. See Todd v. Benning, 173 F. App'x 980, 982-83 (3d Cir. 2006) (expressing approval of the Eighth Circuit's holding in Miller v. Norris, 247 F.3d 736 (8th Cir. 2001) that administrative remedies were not available where prison officials "purportedly prevented prisoner from employing the prison's grievance system"). Examples of affirmative misconduct on the part of prison officials include: (1) threatening a prisoner in an attempt to thwart the prisoner's attempts to exhaust, see Harcum v. Shaffer, 2007 WL 4167161, at *5 (E.D. Pa. 2007) (finding administrative remedies unavailable where prison officials threatened plaintiff with "opposition to his future prerelease application, parole, or outside work detail if he did not withdraw his grievance"), (2) refusing to provide appropriate grievance forms in response to inmate inquiries, see Mitchell v. Horn, 318 F3d 523, 529 (3d Cir. 2003), (3) advising an inmate that his or her situation does not require a grievance, see Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) (finding that administrative remedies were unavailable to plaintiff who had been advised by prison official that

he must wait until the end of the prison's investigation before filing a grievance), and (4) failing to file or respond to a prisoner's grievances, see Camp, 219 F.3d at 280-81 (finding that administrative remedies were unavailable where prison officials refused to file plaintiff's grievances regarding their coworkers). There is no indication, based upon the allegations of the complaint and review of the Administrative Remedy Generalized Retrieval Information, that Frye was prevented or hindered from pursing administrative remedies. In fact, during his incarceration, Frye filed numerous grievances, which undermines any assertion that he was obstructed from seeking administrative relief. It is clear that Frye failed to exhaust his administrative remedies. Consequently, defendant's motion to dismiss will be granted.

## IV. Leave to Amend

When a complaint fails to present a *prima facie* case of liability, district courts must generally grant leave to amend before dismissing the complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)). For the reasons set forth above, and because Frye has failed to oppose the motion to dismiss, the court concludes that granting leave to amend would be futile.

**V.     Conclusion**

Based on the foregoing, the unopposed motion (Doc. 20) to dismiss will be granted. An appropriate order will issue.

           /S/ CHRISTOPHER C. CONNER
           Christopher C. Conner, Chief Judge
           United States District Court
           Middle District of Pennsylvania

Dated:     August 10, 2017